IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | | |
|---|---|---|
| **AMERICAN MEDICAL FACILITIES** | : | |
| **MANAGEMENT, LLC d/b/a AMFM** | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | **Civil Action No. 2:21-cv-00400** |
| | : | |
| **AARON & GIANNA, PLC,** | : | |
| **DEWAYNE L. WILLIAMS,** | : | |
| **VETCOMM, LLC, TERRY READO,** | : | |
| **DERON BROWN** | : | |
| **OSTEOBIOLOGIC SOLUTIONS, INC.,** | : | |
| **and ROBERT BUNDY** | : | |
| | : | |
| **Defendants.** | : | |

## COMPLAINT

**COMES NOW**, Plaintiff, American Medical Facilities Management, LLC d/b/a AMFM ("AMFM"), by and through counsel, and for its Complaint against Aaron & Gianna, PLC, Dewayne L. Williams, Vetcomm, LLC and Osteobiologic Solutions, Inc., states as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, American Medical Facilities Management, LLC d/b/a AMFM ("AMFM"), is a West Virginia Limited Liability Company licensed to do business in West Virginia and owns and operates medical facilities in the state of West Virginia offering skilled nursing, rehabilitation, and long-term care services to patients.

2. Defendant Aaron & Gianna, PLC is and was at all times relevant to the events underlying this Complaint, a professional law corporation organized under the laws of the State of Louisiana,

with its principal place of business located at 201 St. Charles Ave., Ste. 3800, New Orleans, Louisiana.

3. Defendant Dewayne L. Williams is and was at all times relevant to the events underlying this Complaint, a licensed attorney in the State of Louisiana.

4. Defendant Dewayne L. Williams is and was at all times relevant to the vents underlying the Complaint, upon information and belief, an agent, employee, partner, member, shareholder, treasurer, and member of the board of directors of Aaron & Gianna, PLC.

5. Defendant Vetcomm, LLC is and was at all times relevant to the events underlying the Complaint, a limited liability company organized under the laws of the State of Louisiana, with its principal place of business located at 9800 Airline Highway, Ste. 221, Baton Rouge, Louisiana 70816.

6. Defendant Terry Reado is a resident of the state of Texas and is the owner, principal, and member of Defendant Vetcomm, LLC.

7. Defendant Deron Brown, upon information and belief, is a resident of the state of Louisana, and is a partner, defacto partner, owner, defacto owner, principal, agent, employee and/or servant of Vetcomm, LLC.

8. Defendant Osteobiologic Solutions, Inc. is and was at all times relevant to the events underlying the Complaint, a corporation organized under the laws of the State of Texas, with its principal place of business located at 130 Wind Ridge Circle, The Woodlands, Texas 77381.

9. Defendant Robert Bundy is a resident of the state of Texas and is the owner, shareholder, and president of Defendant Osteobiologic Solutions, Inc.

10. Pursuant to 28 U.S.C. § 1332 (a), this Court has subject matter jurisdiction over the Plaintiff's claims because complete diversity of citizenship exists in this action, as Plaintiff is domiciled in West Virginia, and Defendants are not citizens of West Virginia, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

11. Pursuant to F.R.C.P. Rule 4(k), this Court has personal jurisdiction over Defendants.

12. Pursuant to 28 U.S.C. §1391 (b)(2), venue is appropriate in the United States District Court for the Southern District of West Virginia, Charleston District, because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in Kanawha County, West Virginia.  These include negotiation and formation of the contracts between the parties, the place of shipment for the fulfillment of the purchase contract, and the place wherein Plaintiff suffered pecuniary and other harms.

## OPERATIVE FACTS

13. Upon information and belief, a novel coronavirus was discovered in the Wuhan providence of China in December of 2020.

14. Given the multiple risks posed by the virus, including severe health effects and death, on March 13, 2020, pursuant to the National Emergencies Act, Former President Trump declared a national state of emergency as it relates to the development of the 2019 novel Coronavirus ("COVID-19") pandemic.

15. Three days later, on March 16, 2020, West Virginia Governor Jim Justice also declared a state of emergency in the State of West Virginia.

16. As part of the COVID-19 pandemic state and federal authorities, as well as leading health experts, recommended the robust use of personal protective equipment ("PPE") when health care providers and patients interact for purposes protecting patients and providers during the course of rendering of care, treatment, and daily assistance.  These included N95 masks, surgical masks, gowns/coveralls, and gloves.

17. Beginning in March of 2021, PPE supplies, nationally, became scarce as the traditional national supply chain was significantly impacted by the surge in its demand due to COVID-19.

18. AMFM, in an effort to protect its patients/residents and its facility staff from COVID-19, sought to purchase PPE from non-traditional suppliers at significantly higher prices.

19. Upon information and belief, at some point prior to April 14, 2020, Osteobiologic Solutions, Inc. contacted, solicited, and or marketed the availability of PPE supplies for purchase to AMFM at market prices significantly above pre-pandemic levels by Robert Bundy, president of Osteobiologic Solutions, Inc.

20. AMFM, in a desperate state to acquire the necessary PPE, negotiated an order with Robert Bundy, president of Osteobiologic Solutions, Inc for above traditional market prices.

21. The order form provided was from Defendant Vetcomm, LLC, which provided the availability of various items of PPE, including that required by AMFM. *See* Exhibit A.

22. AMFM sought to purchase 20,000 N95 Masks, 20,0000 surgical masks, 25,000 gowns, 5,000 coveralls and 40,000 nitrile exam gloves.  The total purchase of the items sought to be purchased by AMFM was $364,600. *Id.*

23. Pursuant to the terms of the Vetcomm, LLC order form, one hundred percent (100%) of the payment was due upon the time of order. *Id.*

24. Given the size of AMFM's proposed purchase and the atypical supply chain being used, AMFM was hesitant to purchase these supplies from Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

25. Vetcomm, LLC, Osteobiologic Solutions, Inc., DeWayne L. Wialliams, and/or his law firm Aaron & Gianna, PLC, in an effort to induce AMFM to transfer the funds for its proposed order proposed using an escrow agent to hold the $364,600 funds used to purchase the PPE in escrow until the time of the order's fulfillment.

26. AMFM was contacted by attorney DeWayne L. Williams and his law firm Aaron & Gianna, PLC for purposes of serving as an escrow agent for the transaction between AMFM and Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

4

27. AMFM agreed that Attorney Williams and Aaron & Gianna, PLC would serve as escrow agent for the transaction.  Attorney Williams represented, as inducement for the use of his services that AMFM could "[r]est assured that we will hold the funds in escrow until Vetcomm instructs fulfillment and will so advise you of same for comment if necessary."

28. In reliance upon representations of Attorney Williams, his firm Aaron & Gianna, PLC, Vetcomm, LLC, Terry Reado, Deron Brown, Osteobiologic Solutions, Inc., and Robert Bundy, AMFM transferred the sum of $364,600 via wire transfer on April 15, 2020, to an account owned or controlled by Aaron & Gianna, PLC ("Escrow Funds").

29. On April 21, 2020, Attorney Williams and his firm Aaron & Gianna, PLC caused to be transferred from the Escrow Funds, the sum of $167,000.00 to Sky Group Construction & Hauling.  *See* Exhibit B. Defendants did not consult with or seek approval from Plaintiff prior to making this transfer from its Escrow Funds.

30. Sky Group Construction & Hauling, LLC is a limited liability company organized under the laws of the State of Louisiana, with a principal office address of 18242 Smallen Drive, Zachary, Louisiana.  Sky Group Construction & Hauling, LLC's sole member is Clarence Steward, and the entity is not in good standing in the state of Louisiana and upon information and belief was not so at the time of the April 21, 2020 transfer. Upon further information and belief, Sky Group Construction & Hauling, LLC is not engaged in the business of supplying PPE.

31. On April 30, 2020, Attorney Williams and his firm Aaron & Gianna, PLC caused to be transferred from the Escrow Funds, the sum of $39,250.00 to Emergency Medical Supplies. *See* Exhibit B. Defendants did not consult with or seek approval from Plaintiff prior to making this transfer from its Escrow Funds.

32. Also, on April 30, 2020, Attorney Williams and his firm Aaron & Gianna, PLC caused to be transferred from the Escrow Funds, the sum of two thousand dollars ($2,000.00) to Health Management Group.  *See* Exhibit B. Defendants did not consult with or seek approval from Plaintiff prior to making this transfer from its Escrow Funds.

33. On May 5, 2020, Attorney Williams and his firm Aaron & Gianna, PLC caused to be transferred from the Escrow Funds, the sum of $39,250.00 to Zoweh Holdings, LLC. *See* Exhibit B. Defendants did not consult with or seek approval from Plaintiff prior to making this transfer from its Escrow Funds.

34. Zoweh Holdings, LLC is a limited liability company organized under the laws of the State of North Carolina, with a principal office address 84405 Winslow, Chapel Hill, North Carolina 27517. Zoweh Holdings, LLC per its website purports to offer strategic planning, business and organization development, trade missions, executive coaching, and pre-project development. Zoweh Holdings, LLC is currently administratively dissolved and upon information and belief, was also administratively dissolved on May 5, 2020. Upon further information and belief, Zoweh Holdings, LLC is not engaged in the business of supplying PPE.

35. On May 5, 2020, Attorney Williams and his firm Aaron & Gianna, PLC caused to be transferred from the Escrow Funds, the sum of $17,240.00 to Nautilus Global Ventures. *See* Exhibit B. Defendants did not consult with or seek approval from Plaintiff prior to making this transfer from its Escrow Funds.

36. At the time of the May 5, 2020 transfer, AMFM's escrow funds had been depleted to $134,936.00. At no point had Attorney Williams or his firm consulted with or obtained approval from AMFM to transfer any monies from its Escrow Funds.

37. Despite transferring $229,664.00 of AMFM's Escrow Funds, AMFM has only received 20,000 surgical masks at a cost of $25,000.00.

38. On May 28, 2020, AMFM by and through its president, Todd R. Jones, contacted Attorney Williams and notified him that AMFM was canceling the contract for the undelivered portion of the order, totaling $339,600.00, and asked for the immediate return of Escrow Funds. Attorney Williams represented to AMFM that the remaining funds would be wired transferred back to AMFM the following day. The remaining funds were not transferred the following day.

39. On June 9, 2020, after being contacted a second time by AMFM when a return of Escrow Funds was not forthcoming, Attorney Williams notified AMFM for the first time that the balance of Escrow Funds had been depleted to $134,936.00.

40. When questioned why he made unauthorized transfers from AMFM's Escrow Funds without the consent of AMFM, Attorney Williams represented to Mr. Jones of AMFM:

> Thank you for your email. Our firm operated as Escrow Agent for Vetcomm and performed all transactions at the specific instruction of Vetcomm. We had no Escrow Agreement or privity of contract with American Medical Facilities Management (AMFM) requiring notice of expenditures or approval by AMFM, although that was an aspiration if necessary. Conversely, we had an agreement with Vetcomm to perform transactions as specifically directed and when specifically directed. We followed those directions as given and have provided you with a Reconciliation of those transactions. We were always told that the expenditures were to secure the products you ordered, and still have no reason to believe otherwise. We were never told, nor provided documentation, that AMFM's approval of expenditures was required or necessary before we could release funds. If you have documentation to the contrary, please provide same at your earliest convenience.

*See* Exhibit C.

41. On or about June 11, 2020, Attorney Williams and the law firm of Aaron & Gianna, PLC caused to be transferred to AMFM, the sum of $134,936.00.

42. Attorney Williams admits that he transferred AMFM's Escrow Funds without consulting AMFM. Attorney Williams further admits that he did not investigate or seek **any** confirmation from Vetcomm, LLC and/or Osteobiologic Solutions, Inc. regarding the propriety of any requested transfer. Attorney Williams and his firm failed to conduct any review of the requested transfers. Performing even the most modest of cursory reviews would reveal that some of the requested transfers were at best, objectively questionable on their face.

43. On October 21, 2020, undersigned counsel transmitted a letter to Attorney Williams and his firm requesting information concerning transfers from its Escrow Funds. While some communication between Attorney Williams and the principals of his firm has occurred, to date, Attorney Williams has not provided any information concerning the transfers made from AMFM's Escrow Funds.

44. AMFM brings this litigation to recoup sums owed to it from the Defendants in this matter and asserts the following claims.

## COUNT I – BREACH OF CONTRACT – VETCOMM, LLC
## AND OSTEOBIOLOGIC SOLUTIONS, INC.

45. AMFM reasserts the preceding allegations as if fully set forth herein.

46. On or about April 15, 2020, AMFM entered a purchase contract with Vetcomm, LLC and/or Osteobiologic Solutions, Inc. whereby Vetcomm, LLC and/or Osteobiologic Solutions, Inc. agreed to sell and AMFM agreed to purchase 20,000 N95 Masks, 20,0000 surgical masks, 25,000 gowns, 5,000 coveralls, and 40,000 nitrile exam gloves. The total purchase of goods purchased by AMFM was $364,600.00. *See* Exhibit A.

47. On or about April 15, 2020, Defendant, DeWayne Williams, AMFM, and Vetcomm, LLC and/or Osteobiologic Solutions, Inc. entered into an escrow agreement concerning the purchase of PPE, agreeing to serve as an escrow agent for the transaction.

48. On or about April 15, 2020, AMFM transferred funds in the amount of $364,600 to DeWayne Williams and the law firm of Aaron & Gianna, PLC pursuant to the escrow agreement between the parties.

49. Between April 15, 2020, and June 11, 2020 Defendants, DeWayne Williams and Aaron & Gianna, PLC transferred the sum of $229,664.00 to various entities at the direction of Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

50. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc., only delivered 20,000 surgical masks pursuant to the contract, at a stated contract price of $25,000.00.

51. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. failed to deliver any of the remaining PPE purchased under the purchase contract entered on or about April 15, 2020.

52. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc., failed to return the remaining $204,664.00 to AMFM upon cancellation of the contract.

53. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. breached the purchase contract with AMFM by failing to deliver PPE pursuant to the purchase agreement.

8

54. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. further breached the purchase contract with AMFM by failing to return the $204,664.00.

55. As a result of Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. breach of the purchase agreement AMFM has suffered the following harms:

    a. Loss of $204,664.00;

    b. Costs to cover substitute PPE not delivered pursuant to the purchase agreement; and

    c. Other foreseeable financial harms related to Defendants, Vetcomm, LLC, and/or Osteobiologic Solutions, Inc. failure to deliver PPE.

**COUNT III – BREACH OF CONTRACT –
DEWAYNE WILLIAMS AND AARON & GIANNA, PLC**

56. AMFM reasserts the preceding allegations as if fully set forth herein.

57. On or about April 15, 2020, Plaintiff and Defendants, DeWayne Williams, Aaron & Gianna, PLC, Vetcomm, LLC, and/or Osteobiologic Solutions, Inc. entered into an informal escrow agreement concerning the purchase of PPE, agreeing to serve as an escrow agent for the transaction.

58. Pursuant to the informal escrow agreement, Defendants, DeWayne Williams, and Aaron & Gianna, PLC, were required to consult with and obtain AMFM's consent prior to transferring Escrow Funds.

59. Defendants, DeWayne Williams, and Aaron & Gianna, PLC breached the escrow agreement by making transfers in the amount of $229,664.00 from AMFM's Escrow Funds without consulting and obtaining AMFM's consent.

60. As a result of Defendants, DeWayne Williams and Aaron & Gianna, PLC, breach of the escrow agreement, AMFM suffered financial harm in the sum of $204,664.00.

**COUNT III – NEGLIGENCE –
DEWAYNE WILLIAMS AND AARON & GIANNA, PLC**

61. AMFM reasserts the preceding allegations as if fully set forth herein.

62. On or about April 15, 2020, Plaintiff and Defendants, DeWayne Williams, Aaron & Gianna, PLC, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. entered into an informal escrow agreement as it concerns the purchase of PPE, agreeing to serve as an escrow agent for the transaction.

63. Defendant, DeWayne Williams was an employee and/or agent of Aaron & Gianna, PLC acting in the course and scope of his employment and/or agency while acting as escrow agent for the purchase contract between Plaintiff Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

64. Defendants, DeWayne Williams, and Aaron & Gianna, PLC, owed AMFM a duty to act as a reasonably prudent escrow agent under similar or like circumstances.

65. Defendants, DeWayne Williams, and Aaron & Gianna, PLC, failed to act as a reasonably prudent escrow agent by causing transfers to be made from AMFM's Escrow Funds without consulting and obtaining AMFM's consent to said transfers.

66. Defendants, DeWayne Williams and Aaron & Gianna, PLC, further failed to act as a reasonably prudent escrow agent by failing to ensure transfers made from AMFM's Escrow Funds were legitimate and for the purposes of carrying out the purchase of PPE as contemplated by the agreement between AMFM and Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

67. Defendants, DeWayne Williams and Aaron & Gianna, PLC, failures to act as a reasonably prudent escrow agent were the proximate cause of injuries to AMFM, including the loss of Escrow Funds in the amount of $204,664.00 and delay in obtaining necessary PPE for purposes of protecting its staff and patients during the COVID-19 pandemic, thereby forcing AMFM to incur additional costs related thereto.

### COUNT IV – BREACH OF FIDUCIARY DUTY –
### DEWAYNE WILLIAMS AND AARON & GIANNA, PLC

68. AMFM reasserts the preceding allegations as if fully set forth herein.

69. On or about April 15, 2020, Plaintiff and Defendants, DeWayne Williams, Aaron & Gianna, PLC, Vetcomm, LLC and/or Osteobiologic Solutions, Inc. entered into an informal escrow agreement as it concerns the purchase of PPE, agreeing to serve as an escrow agent for the transaction.

70. Defendant, DeWayne Williams was an employee and/or agent of Aaron & Gianna, PLC acting in the course and scope of his employment and/or agency while acting as escrow agent for the purchase contract between Plaintiff Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

71. Defendants, DeWayne Williams, and Aaron & Gianna, PLC, owed fiduciary duties AMFM as their escrow agent.

72. Defendants, DeWayne Williams, and Aaron & Gianna, PLC, breached these fiduciary duties by causing transfers to be made from AMFM's Escrow Funds without consulting and obtaining AMFM's consent to said transfers.

73. Defendants, DeWayne Williams and Aaron & Gianna, PLC, further breached these fiduciary duties by failing to ensure transfers made from AMFM's Escrow Funds were legitimate and for the purposes of carrying out the purchase of PPE as contemplated by the agreement between AMFM and Vetcomm, LLC and/or Osteobiologic Solutions, Inc.

74. As a result of Defendants, DeWayne Williams and Aaron & Gianna, PLC, breaches of their fiduciary duties they caused injury to AMFM, including the loss of Escrow Funds in the amount of $204,664.00 and delay in obtaining necessary PPE for purposes of protecting its staff and patients during the COVID-19 pandemic, thereby forcing AMFM to incur additional costs related thereto.

## COUNT V – UNJUST ENRICHMENT – ALL DEFENDANTS

75. AMFM reasserts the preceding allegations as if fully set forth herein.

76. Plaintiff entered into a purchase contract with Vetcomm, LLC and/or Osteobiologic Solutions, Inc. and an escrow agreement with Defendants, DeWayne Williams and Aaron & Gianna, PLC on or about April 15, 2020.

77. AMFM conferred a benefit to Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, DeWayne Williams and Aaron & Gianna, PLC by transferring Escrow Funds for the purchase of PPE pursuant to the purchase contract.

78. Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, DeWayne Williams and Aaron & Gianna, PLC have enriched themselves through use of $204,664.00 of AMFM's Escrow Funds and have retained the benefits of said funds to the detriment of AMFM.

**79.** Under the circumstances, it would be inequitable and unconscionable to permit Defendants, Vetcomm, LLC and/or Osteobiologic Solutions, DeWayne Williams and Aaron & Gianna, PLC to avoid repayment of $204,664.00 of AMFM's Escrow Funds upon which they unjustly enriched themselves.

## COUNT V – CIVIL CONSPIRACY – ALL DEFENDANTS

80. AMFM reasserts the preceding allegations as if fully set forth herein.

81. Defendants conspired to induce AMFM to enter into a sham purchase agreement for purposes of inducing AMFM to transfer funds to purchase PPE during the pendency of the COVID-19 pandemic necessary to protect the lives and safety of their staff and patients.

82. At the time of entering into the agreement, Defendants knew they would be unable to fulfill the sham purchase agreement.

83. Defendants further conspired, upon AMFM's hesitancy due to the atypical supply chain from which the PPE was being acquired, to induce AMFM to go forward with the transaction by entering into a sham escrow agreement with Defendants, DeWayne Williams, and Aaron & Gianna, PLC.

84. Upon inducement of AMFM to wire the Escrow Funds to Defendants, DeWayne Williams and Aaron & Gianna, PLC, Defendants made illicit and fraudulent transfers of AMFM's Escrow

Funds to individuals and/or entities that were not for purposes of acquiring PPE, but instead for purposes of their enrichment.

85. As a result of the civil conspiracy, AMFM suffered financial harms, including the loss of $204,664.00 and other financial harms.

## COUNT V – FRAUD – ALL DEFENDANTS

86. AMFM reasserts the preceding allegations as if fully set forth herein.

87. Defendants made material and false statements to AMFM as it relates to the availability to the purchase of certain PPE AMFM that was and continues to be necessary to protect the lives and safety of their staff and patients COVID-19 pandemic for purposes of inducing AMFM to transfer funds necessary to purchase this PPE.

88. Defendants made material and false statements to AMFM as it pertains to the security and propriety of the transaction in a further effort to induce AMFM to transfer funds necessary to purchase PPE.

89. Plaintiff relied upon Defendants' material and false statements regarding both the availability of PPE for purchase and the security and propriety of the transaction in its decision to transfer $364,600.00 to Defendants, DeWayne Williams, and Aaron & Gianna, PLC to hold in escrow.

90. At the time of entering into the agreement, Defendants knew they would be unable to fulfill the purchase agreement and further knew that the funds would not be protected by the contemplated escrow agreement.

91. Upon inducement of AMFM to wire the Escrow Funds to Defendants, DeWayne Williams and Aaron & Gianna, PLC, Defendants made illicit and fraudulent transfers of AMFM's Escrow Funds to individuals and/or entities that were not for purposes of acquiring PPE, but instead for purposes of their enrichment.

92. As a result of the Defendants' fraud, AMFM suffered financial harms, including the loss of $204,664.00 and other financial harms.

## PUNITIVE DAMAGES – ALL DEFENDANTS

13

93. AMFM reasserts the preceding allegations as if fully set forth herein.

94. Defendants conduct, as set forth in Counts III-V, was carried out with actual malice toward Plaintiff and/or with a conscious, reckless, and outrageous indifference to the health, safety, and welfare of AMFM, its employees, patients, and citizens of the State of West Virginia during a time of crisis.

95. As a result of Defendants' illicit, fraudulent, and illegal conduct, Plaintiff asserts that punitive damages should be awarded to punish Defendants for their illicit, fraudulent, and illegal conduct and to further deter such conduct in the future.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff, demand judgment against Defendants, jointly and severally, for damages as follows:

     (1) $204,664.00 in unreturned Escrow Funds;

     (2) Foreseeable financial damages related to the cost of covering substitute PPE;

     (3) Foreseeable financial harms suffered as a result of delays incurred in acquiring PPE, including additional costs of caring for patients and/or increased labor costs due to preventable Covid-19 infections;

     (4) Punitive and exemplary damages;

     (5) Attorney's fees and costs;

     (6) Pre- and post-judgment interest; and

     (7) Such other and further relief as justice requires.

PLAINTIFF DEMANDS A TRIAL BY JURY.

AMERICAN MEDICAL FACILITIES
MANAGEMENT, LLC d/b/a AMFM

Plaintiff,

By Counsel:

_____
Mark A. Robinson, Esquire (WVSB #5954)
**FLAHERTY SENSABAUGH BONASSO, PLLC**
P.O. Box 3843
Charleston, WV 25301
(304) 345-0200
(304) 345-0260 (facsimile)
mrobinson@flahertylegal.com

AND

Matthew Mains, Esquire (WVSB # 11854)
**FLAHERTY SENSABAUGH BONASSO, PLLC**
2333 Alexandria Drive
Lexington, KY 40504
Telephone:    (859) 394-0017
Facsimile:    (859) 394-0017
mmains@flahertylegal.com