UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

AMERICAN MEDICAL FACILITIES
MANAGEMENT, LLC, d/b/a American Medical

      Plaintiff,

v.                    Civil Action No. 2:21-cv-00400

AARON & GIANNA, PLC; DEWAYNE
L. WILLIAMS; VETCOMM, LLC;
TERRY READO; and DERON BROWN,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>


Pending before the court is DeWayne Williams and Aaron & Gianna, PLC's Motion for Summary Judgment.  ECF No. 129.


I.    BACKGROUND


This action arises out of a contract to purchase personal protective equipment ("PPE") between plaintiff American Medical Facilities Management, LLC ("American Medical") and defendant Vetcomm, LLC ("Vetcomm").  Ver. Am. Compl., ECF No. 12.  American Medical owns and operates medical facilities in West Virginia.  Vetcomm is a Louisiana limited liability company in the business of selling PPE.  Defs.' Mot., Ex. D, ECF No. 129-4.  Defendant Terry Reado is Vetcomm's chief executive officer and financier.  Pl.'s Resp., Ex. E, Depo. of Terry Reado at 20:1-6, ECF No. 131.  Defendant Deron Brown runs Vetcomm's

day-to-day operations. See id. Defendant Aaron & Gianna, PLC ("A&G"), is a Louisiana-based law firm, of which defendant DeWayne Williams ("Williams") is an attorney shareholder. At the time of the events giving rise to this case, Vetcomm was a client of Williams.

In April 2020, American Medical sought to purchase PPE in response to the COVID-19 pandemic. Due to difficulty obtaining PPE, American Medical began purchasing PPE from non-traditional suppliers. Pl.'s Resp., Ex. A, Depo. of Todd Jones ("Jones Depo.") at 32:2-10, ECF No. 131-1. Matthew Poorman, an American Medical employee who purchased PPE for the plaintiff, identified Vetcomm as a potential supplier of a large order of PPE at a cost of $364,600.00. Jones Depo. at 32:2-5; see Defs.' Mot., Ex. D (PPE Order Form), ECF No. 129-4. On April 13, 2020, a Vetcomm sales representative provided Poorman with Vetcomm's fee list, which listed the products and total price of $364,600.00. Depo. of Matthew Poorman ("Poorman Depo.") at 32:15—33:2. The PPE Order Form also explicitly specified that 100% of the payment was due upon order and that American Medical was to wire funds to an "escrow account" named, "Aaron & Gianna, PLC client trust account." See Ver. Am. Compl. 4, ¶ 21, ECF No. 12; Ver. Am. Compl., Ex. A, ECF No. 12-1. The PPE Order Form provided the account and routing numbers as well as New Orleans,

Louisiana, addresses for the account and the bank.  Ver. Am.
Compl., Ex. A, ECF No. 12-1.

American Medical preferred to pay with a company
credit card, but Vetcomm demanded full and complete payment in
cash.  Jones Depo. at 32:22-33:2; Pl.'s Resp., Ex. C, Depo. of
Matthew Poorman ("Poorman Depo.") at 38:19-39:6; Defs.' Mot.,
Ex. D (PPE Order Form requiring up-front cash payment).  Todd
Jones, president of American Medical, refused to authorize such
a large cash payment.  See Jones Depo. at 32:22-33:2, 44:1-13.
"[A] day or two later," a sales agent of Vetcomm affirmed to
Poorman that American Medical could deposit the funds for the
transaction into an account owned and controlled by A&G to
facilitate cash payment, as set forth above.  See Ver. Am.
Compl. 8, ¶ 41, ECF No. 12; Defs.' Answer 6, ¶ 41, ECF No. 72;
Jones Depo. at 33:4-20; Defs.' Mot., Ex. D. (PPE Order Form).

On the morning of April 15, 2020, Poorman communicated
to Jones the option of depositing the funds into an account
controlled by A&G.  See Jones Depo. at 33:4-20.  Poorman then
sent Jones the PPE Order Form.  As described above, the PPE
Order Form articulated that American Medical would pay Vetcomm
the full $346,600 "upon order" by wiring the funds to an account
named in the PPE Order Form as, "Aaron & Gianna, PLC client

3

trust account" and described as an "escrow account."  Defs.'
Mot., Ex. D (PPE Order Form); Jones Depo. at 35:6–17;.

        Jones was not familiar with A&G and began researching
the firm online after speaking with Poorman.  Jones Depo. at
35:12–17.  That same morning, on April 15, 2020, Jones called
DeWayne Williams.  Jones Depo. at 34:7-35:16, 51:7-14.  Jones
and Williams were the only ones on that call, but neither could
testify to what was specifically said.  Williams testified that
he conveyed to Jones that he did not know who Jones or American
Medical was and that he "didn't know anything about [American
Medical's] transaction," but he confirmed that "Vetcomm is
[A&G]'s client." Williams Depo. at 40:11-18.  Conversely, Jones
was unable to recall or testify specifically to what he and
Williams said.  Jones Depo. at 51:2-18.

        After their phone conversation on April 15, 2020, at
11:48 am that same morning, Jones sent Williams the PPE Order
Form reflecting the agreement between American Medical and
Vetcomm, including that American Medical was to deposit funds in
the account named, "A&G client trust account."  Id. at 40:17–18;
Ver. Am. Compl. 6, ¶ 35.  Williams then sent Jones an email at
1:02 pm, which read:

                It was a pleasure speaking with you this
                morning. As we discussed, Aaron & Gianna,
                PLC is the Escrow Agent for Vetcomm, LLC in

                                4

> connection with PPE orders. Thank you for
> supplying the order form. We will advise
> Vetcomm of our discussion, and advise when
> $364,000 [sic, $364,600.00] have been wired
> into the account. Rest assured that we will
> hold the funds in escrow until Vetcomm
> instructs fulfillment and will so advise you
> of same for comment if necessary. You can
> reach me at our office during business
> hours, or on my cell after hours if
> necessary (504) 872-5352.

Defs.' Mot., Ex. H.

Thereafter, at some point in the afternoon of April 15, 2020, American Medical wired $364,600.00 to A&G's "client trust account," as required by the PPE Order Form.  Pl.'s Resp., Ex. D, Depo. of DeWayne Williams ("Williams Depo.") at 25:2-8; see also id. Ex. B, Depo. of Deron Brown ("Brown Depo.") at 11-12, 39:10-13, 40:21-41:16.

At 6:02 pm on April 15, 2020, Williams sent Jones another email, which stated:

> This confirms receipt of $364,000.00 [sic, $364,600.00] into the account of Aaron & Gianna, PLC in connection with Life Tree Pharmacy[1] PPE Order. We have so advised Vetcomm of the receipt of funds and await further instruction. Please be advised that

---

[1] The PPE Order Form identifies "Lifetree Pharmacy, 15063 MacCorkle Ave SE, Cabin Creek WV 25035" as the delivery address for the order.  Defs.' Mot., Ex. D; see Jones. Depo at 38:9-1 ("Lifetree Pharmacy was the delivery location.").  Nowhere do the parties define what the entity "Lifetree Pharmacy" is, but it is clear the parties agree that any reference to the "Lifetree Pharmacy" order; the "Life Tree Pharmacy" order; or to "Life Care Pharmacy," as defendants refer to it in their payment ledger, is a reference to this transaction and to American Medical.  See Pl.'s Resp., Ex. F.

> upon any request that funds be release [sic,
> released], we will so inform you.

Defs.' Mot., Ex. I (Email from Williams to Jones on Apr. 15,
2020), ECF No. 129-5.

Between April 21, 2020, and May 6, 2020, Williams, at
the direction of Brown and without seeking the approval of or
notifying American Medical, caused the following amounts to be
sent to various businesses: $167,000.00 on April 21, 2020;
$39,250.00 on April 30, 2020; $2,000.00 on April 30, 2020;
$4,174.00 on May 5, 2020; and $17,240.00 on May 6, 2020.  See
Defs.' Mot., Ex. E, 129-5; see also Brown Depo. at 23:11-24:11;
Ver. Am. Compl. ¶¶ 50, 57; Pl.'s Resp., Ex. F (list of
disbursals).  In return, American Medical only received
$25,000.00 worth of surgical masks.  Pl.'s Resp., Ex. F, ECF No.
131-6.

On May 28, 2020, believing that Williams had only
disbursed $25,000.00 of the funds that American Medical had put
into A&G's client trust account, Jones informed Williams that
American Medical sought to cancel the contract and requested
return of its remaining funds, which Jones believed to be
$339,600.00 (the original $364,600 less the $25,000 for the
value of the surgical masks).  Ver. Am. Compl. 11, ECF No. 12.
Having received no response, Jones, on June 9, 2020, again

6

emailed Williams to demand return of the remaining funds.  Id.;
see Pl.'s Resp., Exhibit F.

Approximately eight hours later, by email on June 9,
2020, Williams replied to Jones, denying the existence of an
escrow agreement with American Medical, reiterating that A&G
acted only as "specifically directed" by Vetcomm, and asking for
Jones to provide documentation indicating otherwise if he had
any.  Defs.' Reply, Ex. Q.  Additionally, Williams confirmed
that, with Vetcomm's permission, A&G would return the remaining
funds in the client trust account, $134,936.00, to American
Medical.  Id.  This email was the first time Jones learned that
A&G had caused any funds to be sent out of the client trust
account, let alone a total of $229,664.00.

Jones did not reply to this email or contemporaneously
indicate that any contentions therein were incorrect.  On June
11, 2020, Williams returned the remaining funds in A&G's client
trust account, $134,936.00, to American Medical.

While the foregoing constitute the undisputed material
facts, the court notes that Williams and Jones had differing
understandings of what they discussed to be the structure of
this transaction.  Jones' understanding was that Williams would
hold the money "in trust, "make sure [American Medical] got
[their] product," and would not disburse any funds without

7

American Medical's prior approval. Jones Depo. at 36:4-6; <u>see</u>
Jones Depo. at 35:23-36:4, 43:19-20, 47:4-13, 51:2-18, 64:2-
65:23.  Conversely, Williams believes that through the phone
call and emails he conveyed his understanding that the funds in
question were Vetcomm's money and that his role in the
transaction was merely to hold and release funds pursuant to
Vetcomm's instruction.  See <u>id.</u> at 37:9-38:14 ("[W]hen [money]
comes in to the client trust account . . . [i]t is the client's
money.  And the client at that point is Vetcomm. . . . And as
Vetcomm instructs [A&G] to release the funds, then I have to
release the funds."), 39:3—20, 40:2-18.

In November 2021, American Medical initiated this
action, seeking $204,664.00.  American Medical maintains breach
of contract claims against Brown, Reado, Vetcomm, Williams, and
A&G.[2]  American Medical alleges Williams and A&G were
contractually obliged to serve as escrow agents for the
transaction between Vetcomm and American Medical.  Pl.'s Resp.,
ECF No. 131, 9, 11; <u>see</u> <u>also</u> Pl.'s Resp. to Mot. in Limine, ECF
No. 105, 7-9.  American Medical alleges that Williams and A&G,
as escrow agents, owed certain duties to American Medical —

---

[2] American Medical dropped its claims for joint venture,
professional negligence, breach of fiduciary duty, unjust
enrichment, civil conspiracy, and fraud.  Pl.'s Status Report of
Jan. 18, 2023, ECF No. 97.

namely, a duty to release funds with American Medical's approval, which defendants Williams and A&G breached by releasing funds without American Medical's consent.

At issue in this motion for summary judgment is American Medical's breach of contract claim against Williams and A&G.

## II.  LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those necessary to establish the elements of a party's cause of action.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  <u>Id.</u>  The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986).  If the movant satisfies this burden, then the non-movant must set forth specific facts as would be

admissible in evidence that demonstrate the existence of a genuine issue of fact for trial.  Fed. R. Civ. P. 56(c); id. at 322-23.  A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the

10

motion." <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

### III. ANALYSIS

Williams and A&G argue there are no genuinely disputed material facts, and they are entitled to judgment as a matter of law for three reasons: (1) American Medical was not in privity of contract with defendants Williams and A&G; (2) there is an absence of evidence of an escrow agreement between defendants Williams and A&G and American Medical; and (3) defendants Williams and A&G "did not enter into a three-party escrow agreement with" American Medical and Vetcomm.  Defs.' Mem., ECF No. 130.  Defendants Williams and A&G essentially argue there is no evidence of a contract between them and American Medical.

American Medical responds by arguing there are genuine disputes of material facts respecting contract formation and contract terms.  American Medical identifies three issues: (1) whether Jones and Williams formed a contract in their April 15 telephone call; (2) whether the parties reasonably believed an escrow agreement was created; and (3) whether Williams was obligated to obtain American Medical's permission prior to releasing funds.  The core of American Medical's argument is that there is sufficient evidence to establish a genuine question of material fact as to whether a contractual

relationship existed between American Medical and defendants A&G and Williams. Pl.'s Resp. to Defs.' Mot. in Limine, ECF No. 105, 7–9.

The court must essentially determine whether there is a genuine dispute of material fact as to whether a contract was formed between American Medical and defendants Williams and A&G, and, if so, what the terms of that contract are.  The court finds that no contract was formed between American Medical and defendants Williams and A&G.

A.    APPLICABLE LAW

A federal court sitting in diversity is bound to apply the substantive law of the state in which the district court sits, which includes the forum state's choice of law rules.  See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496–97 (1941); Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008).  In West Virginia, the "law of the state in which a contract is made and to be performed governs."  Syl. Pt. 1, Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 293 (W.Va.1981).  In this case, both parties in their briefs apply West Virginia law and seemingly agree that this transaction is most significantly related to West Virginia. Thus, the court applies West Virginia law.

### B.   CONTRACT ANALYSIS

To determine whether a contract existed between American Medical and defendants Williams and A&G, the court must first ascertain whether defendants Williams and A&G could, in their involvement with this transaction, be deemed to have entered into a contract on their own behalf.  The court must also determine whether defendants Williams and A&G were merely agents of Vetcomm and, if so, whether their actions were within or beyond their authority.  See Johnson v. Welch, 24 S.E. 585, Syl. Pt. 2 (W. Va. 1896) (holding an agent's contractual promises made within the scope of the agent's authority binds only the principal, not the agent); Davis v. Fisher, 111 S.E. 155, 155-56 (W. Va. 1922).

An agent is "a representative of his principal in business or contractual relations with third persons," where there is "some degree of control by the principal over the conduct and activities of the agent."  Harper v. Jackson Hewitt, Inc., 706 S.E.2d 63, 75 (W. Va. 2010).  The inquiry of whether an agency relationship exists is fact specific, and proof of an "express contract of agency is not essential to the establishment of" an agency relationship because it "may be inferred from facts and circumstances, including conduct."  Id. (citing Arnold v. United Companies Lending Corp., 511 S.E.2d

854, 865 (W. Va. 1998) (overruled on other grounds)).  An agency
relationship may thus be inferred when a purported principal had
the right to and did control the purported agent's actions.  Id.

      After their telephone conversation on April 15, 2020,
Jones sent Williams the PPE Order Form wherein it is stated that
payment was to be made to A&G's "client trust account."  Then,
in his first email to Jones on April 15, 2020, Williams
represented himself and A&G as Vetcomm's agent, identifying A&G
as "the Escrow Agent for Vetcomm."  Defs.' Mot., Ex H.  From the
PPE Order Form and Williams' first email, Jones and American
Medical were on notice that Williams was acting as Vetcomm's
agent, rather than on his own behalf.  Upon receipt of Williams'
first email, Jones sent the $364,600.00 to the "Aaron & Gianna
client trust account," as directed on the PPE Order Form.  In
Williams' second email that same day, he said nothing that would
indicate that A&G's conduct was not controlled solely by
Vetcomm.  Defs.' Mot., Ex. H, I, ECF Nos. 129-8, 9.  Further,
Deron Brown, the managing member of Vetcomm, affirms in his
affidavit that Vetcomm "engaged [A&G] to act as its escrow
agent."  Brown Aff. ¶ 5, Defs.' Mot. 39, Ex. F, ECF No. 129-6
(emphasis in original).

      American Medical failed to cite to any materials in
the record that indicate defendants Williams and A&G were acting

14

on their own rather than as agents of Vetcomm.  When Jones was asked whether Williams represented A&G or himself any differently during their phone call on the morning of April 15, 2020 – prior to either email – Jones did not testify that Williams represented himself differently.[4]  Though Jones testified that his "understanding" of the conversation was that Williams would first inform American Medical before disbursing any funds, he offered no specific evidence to support that understanding or to support any possible finding that A&G or Willliams promised to act at American Medical's behest, rather than solely at Vetcomm's.  Id. at 48:8-16.  Further still, Jones did not contest Williams' first email identifying A&G as an escrow agent of Vetcomm nor did he take issue with Williams' statement therein that "[A&G] will hold the funds in escrow until Vetcomm instructs fulfillment."  Defs.' Mot., Ex. H, ECF No. 129-8 (emphasis added).  Rather than contesting or clarifying that status, Jones then sent $364,600 to A&G's client trust account.  Accordingly, the court finds that there is no genuine question as to the fact that defendants Williams and A&G were acting only as agents of Vetcomm, not as separate parties

---

[4] When specifically asked if there was "anything that you talked about in that [April 15, 2020, phone conversation with Williams] that's not in [Williams' first April 15, 2020, email]," Jones only replied, "You know, I – do I recall every word that we said during the phone conversation? No."  Jones Depo. at 37:11-16, ECF No. 131-1.

to the transaction; that is, Williams and A&G did not on their own behalf enter into a contract with American Medical.

The court turns next to what that agency relationship means in the context of this suit and this motion for summary judgment.  Under West Virginia law, "[a] duly authorized agent, acting" within the scope of his authority on behalf of his principal "is not personally responsible on the contract when the third party knows that he acts in the name and in behalf of the principal," unless the agent expressly agrees to personal liability.  Johnson v. Welch, 24 S.E. 585, Syl. Pt. 2 (W. Va. 1896); see Davis v. Fisher, 111 S.E. 155, 155-56 (W. Va. 1922) ("Where an agent, within the scope of his actual or apparent authority, and acting for and on behalf of his disclosed principal, makes a contract . . . such contract is deemed to be that of the principal, and the agent is not bound by it, unless his conduct or his express promise evinces an intention that he shall be bound personally."); Lawson v. American Gen. Assur. Co., 455 F. Supp. 2d 526, 530 (S.D.W. Va. 2006) (citing Hoon v. Hyman, 105 S.E. 925 (W. Va.  1921).

West Virginia recognizes that an agent may have express, implied, or apparent authority to bind its principal. See Uniontown Grocery Co. v. Dawson, 69 S.E. 845, Syl. Pt. 2 (W. Va. 1910); All Med, LLC. V. Randolph Eng'g. Co. Inc., 723 S.E.2d

864, 871 (explaining that apparent authority arises when "the principal knowingly permits the agent to exercise, or . . . holds him out as possessing," such authority).  Even if an agent exceeds such authority, the principal will be bound by the agent's promises on behalf of the principal if the principal ratifies such actions.  See Uniontown Grocery Co., 69 S.E. at 847.  Though ratification may not be implied by silence, affirmative ratification or conduct by the principal indicating intent to ratify will suffice to bind the principal.  Id.

In this case, defendants Williams and A&G had, at the very least, authority to receive and disburse funds as Vetcomm's agent.  Vetcomm listed A&G as its "escrow agent" on the order form, indicated that A&G had a client trust account on Vetcomm's behalf, held A&G out as the payment middleman to the parties to this transaction, and, because A&G only disbursed funds pursuant to Vetcomm's instruction, exercised control over the funds in A&G's client trust account.  See Defs.' Mot., Ex. E, ECF No. 129-5 (order form); Brown Depo. ¶ 4, ECF No. 129-6 at 2; Brown Aff. ¶¶ 9, 11, Defs.' Mot., Ex. F, ECF No. 129-6; Williams Aff. ¶¶ 16, 19, Defs.' Mot., Ex. G, ECF No. 129-6 ("Williams Aff.").

Even if Williams exceeded his agency authority when agreeing to notify American Medical with respect to any request to release funds, Vetcomm ratified his actions.  Brown, the

17

managing member of Vetcomm, was party to both of Williams' April 15, 2020, emails.  <u>See</u> Defs.' Mot., Ex. H, ECF No. 129-8; Defs.' Mot., Ex. I, ECF No. 129-9.  In the first of those emails, Williams represented himself and A&G as an agent of Vetcomm and noted both "that [A&G] will hold the funds in escrow until Vetcomm instructs fulfillment and will so advise [Jones} of the same for comment if necessary"; and, after Jones wired the $364,600.00, acknowledged receipt in the second email and added "that upon any request that funds be release [sic, released], [A&G] will so inform [American Medical]," without specifying when such notice would be given.  Defs.' Mot., Ex. H, I; ECF Nos. 129-8, 9.  Vetcomm then provided "explicit instruction and direction" to A&G to disburse some of those funds to purported PPE vendors.  Williams Aff. ¶ 16.  Even if A&G did not have authority to bind Vetcomm to a contract to notify American Medical at some point respecting requests that funds be released, Vetcomm ratified A&G's actions by ordering A&G to disburse such funds after knowing that A&G had created a notification obligation of some sort.

Throughout the entirety of this transaction, defendants Williams and A&G were acting solely as agents of Vetcomm.  Thus, even if Williams volunteered in the second email to notify Jones upon request to disburse the subject funds, such

a modification would bind only Vetcomm, the principal, and not defendants Williams and A&G, the agents.  See Lawson v. American Gen. Assur. Co., 455 F. Supp. 2d 526, 530 (S.D.W. Va. 2006).

Accordingly, the court finds that there is no genuine question of material fact that defendants Williams and A&G were acting as agents of Vetcomm and that no contract exists between American Medical and defendants Williams and A&G.

IV.  CONCLUSION

Based on the foregoing, the court GRANTS this motion for summary judgment.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

Entered: October 5, 2023

John T. Copenhaver, Jr.
Senior United States District Judge

19